**EXHIBIT A**

DocuSign Envelope ID: D902F2A7-07AB-4EDD-B295-13F2FB2FCB8A

# BUSINESS LOAN AND SECURITY AGREEMENT



LOAN NO: ▆▆▆▆1629

THIS BUSINESS LOAN AND SECURITY AGREEMENT (**"Agreement"**), dated June 9, 2022, is made by and between Cole WSTECH, LLC, an Illinois limited liability company (**"Borrower"**), whose address is:

> 2960 Lewallen Pl
> Decatur, IL 62521-4839
> Attn: Ronald N. Cole

and FIRST FED BANK, a Washington bank corporation, and its successors, participants, and assigns (**"Lender"**), whose address is:

> FIRST FED BANK
> P.O. Box 351
> Port Angeles, WA 98362
> Attn: Kasi O'Leary

**Borrower has applied to Lender for a commercial loan to finance the purchase or refinance of one or more water dispensing Systems (each, a "System") described herein. Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement, together with the security interest in the Collateral (defined below) granted by this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole discretion and Lender's application and underwriting criteria, as amended from time to time by Lender; and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement.**

1. **TERM.** This Agreement shall be effective as of the date first set forth above, and shall continue in full force and effect until such time as the Loan evidenced hereby has been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges.

2. **LOAN**. Subject to the terms and conditions of this Loan Agreement, the Note, and all of the other Related Documents (each as defined below), Lender agrees to extend to Borrower a Loan in the principal amount of $1,500,000.00 (the "**Loan**").

3. **CONDITIONS PRECEDENT TO LOAN CLOSING.** Lender's obligation to make an Advance of Loan proceeds under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents, including, without limitation, the following conditions:

    3.1. **Loan Documents.** Borrower shall provide to Lender the following documents for the Loan: (1) this Agreement; (2) the Note; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) evidence of insurance as required below; (5) the guaranties required hereunder; (6) a Disbursement Request and Authorization; and (7) all Related Documents as Lender may require for the Loan; all fully executed and in form and substance satisfactory to Lender.

    3.2. **Third-Party Documents**. Borrower shall provide to Lender fully executed copies of the Service and Management Agreement(s) between Borrower and Water Station Management, LLC (the "**Service and Management Agreement**") applicable to the System(s) that are financed by, and that are collateral for, the Loan.

    3.3. **Deposit Account.** Borrower shall have opened a deposit account with Lender (the "**Deposit Account**") and deposited therein funds in an amount equal to up to thirty percent (30%) of the original invoice price of the System(s)

financed by the Loan *plus* the amount necessary to pay two months' principal and interest due under the Loan, each as designated by Lender in its discretion. Borrower acknowledges and agrees that, upon the closing of the Loan hereunder, funds in the Deposit Account will be used to pay the balance of the amount necessary to purchase or refinance the System(s) financed by the Loan.

    3.4.    **Loan Fee and Other Closing Costs**. Borrower shall have paid to Lender the loan fee and all other closing costs set forth on the Disbursement Request and Authorization executed concurrently herewith.

    3.5.    **Payment of Any Other Fees and Expenses.** Borrower shall have paid to Lender all other fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

    3.6.    **Borrower's Authorization.** Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender, may require.

    3.7.    **Representations and Warranties.** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

    3.8.    **No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

    4.    **GRANT OF SECURITY INTEREST, COLLATERAL DESCRIPTION. In connection with the Loan, Borrower hereby grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.** The word "**Collateral**" as used in this Agreement means all of Borrower's right, title, and interest in and to all of Borrower's property of any nature whatsoever, tangible and intangible, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, and all products, profits, rents, proceeds, and accessions of such property, including, without limitation the personal property described on Exhibit A hereto. In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

    4.1.    All accessions, attachments, accessories, replacements of and additions to any of the Collateral described herein, whether added now or later.

    4.2.    All products and produce of any of the property described in this Collateral section.

    4.3.    All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

    4.4.    All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

    4.5.    All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Borrower's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

    4.6.    All of Borrower's right, title, and interest in and to any and all contracts, agreements, documents, and instruments related to the Collateral, including, without limitation, the Service and Management Agreement(s) related thereto.

    5.    **REPRESENTATIONS AND WARRANTIES GENERALLY.** Borrower represents and warrants to Lender, as of the date of this Agreement and as of the date of Lender's Advance of Loan proceeds, and at all times any Indebtedness exists:

    5.1.    **Organization.** Borrower is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Illinois. Borrower is duly authorized to transact business in all states in which Borrower is doing business, having obtained all necessary filings, governmental licenses

and approvals for each state in which Borrower is doing business. Borrower maintains an office at 2960 Lewallen Pl, Decatur, IL 62521-4839. Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's state of organization or any change in Borrower's name.

    5.2. **Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Borrower's articles of organization or membership agreements, or (b) any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or the Collateral.

    5.3. **Single-Purpose.** Borrower was formed for the sole purpose of owning and operating one or more Systems. Borrower has not, and shall not, engage in any business activity other than owning and operating the System(s).

    5.4. **Restricted Persons.** Neither Borrower, nor any person owning any interest in any Borrower, is (or will be) a person with whom Lender is restricted from doing business under regulations of the Office of Foreign Asset Control of the U.S. Department of the Treasury ("**OFAC**") (including, those persons named on OFAC's Specially Designated Nationals and Blocked Persons List) or under any statute, executive order (including, without limitation, the September 24, 2001 Executive Order Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism), or other governmental action, and is not and shall not engage in any dealings or transactions or otherwise be associated with such persons. In addition, Borrower hereby agrees to provide Lender with any additional information that Lender may deem necessary from time to time to ensure compliance with Lender's OFAC or any other applicable laws requiring Lender to collect customer identification materials, including, without limitation, home addresses, telephone numbers, birthdates, social security and other tax identification numbers, and the like.

6. **BORROWER'S REPRESENTATIONS AND WARRANTIES REGARDING THE COLLATERAL.** With respect to the Collateral, Borrower represents and promises to Lender that:

    6.1. **Perfection of Security Interest.** Borrower agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Borrower will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Borrower will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. **This is a continuing security agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Borrower may not be indebted to Lender.**

    6.2. **Notices to Lender.** Borrower will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Borrower's name; (2) change in Borrower's assumed business name(s); (3) change in the management or in the members or managers of the limited liability company Borrower; (4) change in the authorized signer(s); (5) change in Borrower's principal office address; (6) change in Borrower's state of organization; (7) conversion of Borrower to a new or different type of business entity; or (8) change in any other aspect of Borrower that directly or indirectly relates to any agreements between Borrower and Lender. No change in Borrower's name or state of organization will take effect until after Lender has received notice.

    6.3. **Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

    6.4. **Location of the Collateral.** Borrower agrees to keep the Collateral at Borrower's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Borrower will deliver to Lender in form satisfactory to Lender a schedule of Collateral locations relating to Borrower's operations, including without limitation the location(s) of all System(s) owned by Borrower.

6.5. **Removal of the Collateral.** Borrower shall not remove any System from its existing location without Lender's prior written consent. Borrower shall, whenever requested, advise Lender of the exact location of the System(s) owned by Borrower.

6.6. **Transactions Involving Collateral.** Without Lender's prior written consent, Borrower shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. Borrower shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Borrower shall immediately deliver any such proceeds to Lender.

6.7. **Title.** Borrower represents and warrants to Lender that Borrower holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Borrower shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

6.8. **Repairs and Maintenance.** Borrower agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Borrower further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

6.9. **Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

6.10. **Taxes, Assessments and Liens.** Borrower will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents.

6.11. **Compliance with Governmental Requirements.** Borrower shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral. Borrower may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

6.12. **Maintenance of Casualty Insurance.** Borrower shall procure and maintain special form (formerly known as all risk) all risk insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, together with any insurance required by the Service and Management Agreement, each in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Borrower will provide Lender with such loss payable or other endorsements as Lender may require. If Borrower at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

6.13. **Application of Insurance Proceeds.** Borrower shall promptly notify Lender of any loss or damage to the Collateral if the estimated cost of repair or replacement exceeds $5,000.00, whether or not such casualty or loss is covered by insurance. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Borrower from the proceeds for the reasonable cost of repair or restoration. If Lender does

not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Borrower.

      6.14.    **Financing Statements.** Borrower authorizes Lender to file one or more UCC financing statements, or alternatively, a copy of this Agreement to perfect Lender's security interest granted hereby. At Lender's request, Borrower additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Collateral. Borrower will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Borrower irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement.

      7.    **AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

      7.1.    **Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

      7.2.    **Financial Records.** Maintain its books and records in accordance with accounting principles acceptable to Lender, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

      7.3.    **Financial Statements.** Furnish Lender with such financial statements and other related information of Borrower or any Guarantor at such frequencies and in such detail as Lender may reasonably request.

      7.4.    **Guaranties.** Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loan in favor of Lender, executed by each guarantor named below, on Lender's forms, and in the amount and under the conditions set forth in those guaranties.

| Name of Guarantor | Amount |
|---|---|
| Ronald N. Cole | **Unlimited** |

      7.5.    **Loan Proceeds.** Use all Loan proceeds solely for the purchase or refinance of System(s) that will be owned and operated by Borrower in accordance with the terms of this Agreement.

      7.6.    **Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits.

      7.7.    **Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

      7.8.    **Compliance with Governmental Requirements.** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's businesses and operations, and to the use of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

      7.9.    **Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records

and to make copies of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

    7.10.    **Single-Purpose Entity.** Engage exclusively in the business of owning and operating the System(s), and in no other business or activity without Lender's prior written consent. Without limiting the foregoing, Borrower will not (i) engage in any business or activity other than the ownership and operation of the System(s), (ii) acquire or own any assets other than the System(s), (iii) own any subsidiary or make any investments in any other entity, (iv) comingle its assets with the assets of any other entity, or (v) make any loans or guaranty the indebtedness of any other person or entity.

    7.11.    **Service and Management Agreement.** At all times comply with the terms and conditions of the Service and Management Agreement(s) to which Borrower is a party. Furthermore, Borrower shall immediately notify Lender of any breach of or default under the Service and Management Agreement(s), either by Borrower or any other party thereto.

    7.12.    **Deposit of Funds**. Cause all proceeds of the Service and Management Agreement to be deposited directly into the Deposit Account.

    7.13.    **Automatic Withdrawal of Funds**. Execute any and all documents requested by Lender to permit, authorize and direct Lender to automatically debit amounts due under the Note or any of the other Loan Documents directly from the Deposit Account without further notice to, or authorization from, Borrower.

    8.    **RECOVERY OF ADDITIONAL COSTS.** If the imposition of or any change in any law, rule, regulation, guideline, or generally accepted accounting principle, or the interpretation or application of any thereof by any court, administrative or governmental authority, or standard-setting organization (including any request or policy not having the force of law) shall impose, modify or make applicable any taxes (except federal, state or local income or franchise taxes imposed on Lender), reserve requirements, capital adequacy requirements or other obligations which would (A) increase the cost to Lender for extending or maintaining the Loan to which this Agreement relates, (B) reduce the amounts payable to Lender under this Agreement or the Related Documents, or (C) reduce the rate of return on Lender's capital as a consequence of Lender's obligations with respect to the credit facilities to which this Agreement relates, then Borrower agrees to pay Lender such additional amounts as will compensate Lender therefor, within five (5) days after Lender's written demand for such payment, which demand shall be accompanied by an explanation of such imposition or charge and a calculation in reasonable detail of the additional amounts payable by Borrower, which explanation and calculations shall be conclusive in the absence of manifest error.

    9.    **BORROWER'S RIGHT TO POSSESSION.** Until default, Borrower may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Borrower shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Borrower shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

    10.    **LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

    11.    **NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

    11.1. **Indebtedness and Liens.** (1) Except for indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases, (2) sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of the Collateral or Borrower's assets, or (3) sell with recourse any of Borrower's accounts, except to Lender.

    11.2. **Continuity of Operations.** (1) Engage in any business activities except in accordance with the single-purpose entity covenants set forth herein, (2) cease operations, liquidate, merge or restructure as a legal entity (whether by division or otherwise), consolidate with or acquire any other entity, change its name, convert to another type of entity or redomesticate, dissolve or transfer or sell Collateral, or (3) make any distribution with respect to any capital account, whether by reduction of capital or otherwise, that would result in a breach of the terms of this Agreement or Borrower's inability to make payments under the Loan as and when they become due.

    11.3. **Loans, Acquisitions and Guaranties.** (1) Loan, invest in or advance money or assets to any other person, enterprise or entity, (2) purchase, create or acquire any interest in any other enterprise or entity, or (3) incur any obligation as surety or guarantor other than in the ordinary course of business.

    11.4. **Agreements.** Enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

   12. **RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account), including, without limitation, the Deposit Account. This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

   13. **DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

    13.1. **Payment Default.** Borrower fails to make any payment when due under the Loan.

    13.2. **NSF Notification.** Lender, upon initiating any payment from the Deposit Account pursuant to this Agreement, receives an NSF notification or other similar notification that there are insufficient amounts in the Deposit Account to make the required payment.

    13.3. **Other Default.** Borrower fails to comply with any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents.

    13.4. **Default Under Service and Management Agreement.** Borrower fails to comply with the terms of the Service and Management Agreement(s) applicable to the Collateral and Borrower does not remedy such failure within the applicable cure period, if any.

    13.5. **Default in Favor of Third Parties.** Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay the Loan or perform Borrower's obligations under this Agreement or any Related Document.

    13.6. **False Statements.** Any representation or statement made by Borrower to Lender is false in any material respect.

    13.7. **Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

13.8. **Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan.

13.9. **Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

13.10. **Insecurity.** Lender in good faith believes itself insecure.

14. **RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Washington Uniform Commercial Code. In addition, and without limitation, Lender may exercise any one or more of the following rights and remedies:

14.1. **Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Borrower would be required to pay, immediately due and payable, without notice of any kind to Borrower.

14.2. **Assemble Collateral.** Lender may require Borrower to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Borrower to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Borrower to take possession of and remove the Collateral.

14.3. **Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Borrower. Lender may sell the Collateral at public auction or private sale, including, without limitation, a private sale to Water Station Management, LLC, or an affiliate thereof, on terms acceptable to Lender it its discretion. In such event, Lender shall endeavor to, but shall have no obligation to, give Borrower reasonable notice of the sale of the Collateral. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

14.4. **Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding or pending foreclosure or sale, and to collect the rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness.

14.5. **Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral, whether under the Service and Management Agreement or otherwise. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and, regardless of any such transfer, Lender may receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Borrower, direct payments be made in accordance with Lender's instructions, endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

14.6. **Assign Service and Management Agreement.** Cause Borrower to execute any and all documents necessary, in Lender's discretion, to assign, transfer, and convey Borrower's interest in the Service and Management Agreement to Lender or its designee and, if Borrower fails to execute any and all such documents within ten (10) days following Lender's demand, exercise the power of attorney granted by this Agreement to cause such assignment, transfer, and conveyance on behalf of Borrower.

14.7. **Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Borrower for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Borrower shall be liable for a deficiency even if the transaction

described in this subsection is a sale of accounts or chattel paper.

        14.8. **Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

        14.9. **Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower under this Agreement, after Borrower's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

    15. **MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

        15.1. **Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

        15.2. **Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. The foregoing costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

        15.3. **Governing Law. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Washington without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Washington.**

        15.4. **Choice of Venue.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of King County, State of Washington.

        15.5. **No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, shall constitute a waiver of any of Lender's rights or of any of Borrower's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

        15.6. **Notices.** Subject to applicable law, and except for notice required or allowed by law to be given in another manner, any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered in-person, when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the address(es) set forth on the first page of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address.

        15.7. **Participation and Syndication**. Lender may assign its rights and obligations under this Agreement or the Loan, in whole or in part, or sell the Loan or a participation interest in the Loan to any affiliate of Lender or third party. Borrower agrees that Lender may provide any successor, Loan purchaser, or participant in the Loan with copies of any financial statements, credit reports and other information relating to Borrower, any Guarantor, or the Collateral. Borrower shall provide any successor, purchaser, or participant with such additional information regarding Borrower, any Guarantor, the Collateral, or the Loan as Lender may request.

*Loan and Security Agreement - Water Station Form*         *page 9*
ND: 23314.01101 4811-4778-3929v5

15.8.     **Power of Attorney.** Borrower hereby appoints Lender as Borrower's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement, to demand termination of filings of other secured parties, and to exercise any of the other powers Lender is specifically authorized to exercise on behalf of Borrower hereunder. The power of attorney granted hereby is irrevocable during the term of this Agreement and shall be deemed coupled with an interest. Furthermore, the power of attorney granted hereby may be exercised by Lender in accordance with the terms of this Agreement and the Related Documents without further notice to, or authorization from, Borrower.

15.9.     **Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

15.10.   **Successors and Assigns.** Borrower may not assign, transfer, or convey all or any portion of its rights hereunder without Lender's prior written consent. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the Indebtedness.

15.11.   **Survival of Representations and Warranties.** All representations, warranties, and agreements made by Borrower in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

15.12.   **Time is of the Essence.** Time is of the essence in the performance of this Agreement.

15.13.   **Indemnification**.  If a claim arises for which Borrower has a duty to defend Lender under this Agreement or any of the other Loan Documents, Lender shall have the right to choose its own legal counsel (at Borrower's expense) and make all decisions relating to its defense, including, without limitation, the litigation strategy and the terms of any settlement.

15.14.   **Counterparts.**  This Agreement may be signed in one or more counterparts, each of which shall be an original and all of which together shall constitute but one and the same instrument.

**15.15.   JURY TRIAL WAIVER.**  BORROWER HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS.  THIS WAIVER IS KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY MADE BY BORROWER, AND BORROWER ACKNOWLEDGES THAT NO PERSON ACTING ON BEHALF OF LENDER HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT.  BORROWER FURTHER ACKNOWLEDGES THAT BORROWER HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS AGREEMENT AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED OF BORROWER'S OWN FREE WILL, AND THAT BORROWER HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL**.**

15.16.   **Errors and Omissions.**  Borrower, for and in consideration of the Loan, agrees, if requested by Lender, to fully cooperate in modifying the Loan Documents to adjust for clerical errors, if any, in some or all of the Loan Documents or if deemed necessary or desirable in the reasonable discretion of Lender to enable Lender to sell, convey, seek guaranty or market said Loan to any entity, including but not limited to an investor, Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Government National Mortgage Association, Federal Housing Authority or the Department of Veteran Affairs, or any Municipal Bonding Authority; *provided, however*, that the terms and conditions of such modified Loan Documents will be materially equal to the Loan Documents as they apply to Borrower and Guarantor.  Borrower agrees to comply with all above noted requests by Lender within ten (10) days from date of mailing said requests.  Borrower agrees to assume all costs including, by way of illustration and not limitation, actual expenses, reasonable legal fees, and marketing losses for failing to comply with correction requests in above noted time period.

16. **DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

16.1. **Advance.** The word "Advance" means the disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf under the terms and conditions of this Agreement.

16.2. **Agreement.** The word "Agreement" means this Business Loan and Security Agreement, as it may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

16.3. **Borrower.** The word "Borrower" means Cole WSTECH, LLC and includes all co-signers and co-makers signing the Note and its and their respective successors and assigns.

16.4. **Collateral.** The word "Collateral" means the System(s) financed by the Loan and any other property and assets granted as collateral security for the Loan, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, assignment, pledge, chattel mortgage, collateral chattel mortgage, conditional sale, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

16.5. **Deposit Account**. The words "Deposit Account" mean the account opened with Lender and maintained with Lender in accordance with the terms of this Agreement throughout the term of the Loan.

16.6. **Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

16.7. **GAAP.** The word "GAAP" means generally accepted accounting principles.

16.8. **Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

16.9. **Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

16.10. **Indebtedness.** The word "Indebtedness" means the Loan and any other indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

16.11. **Lender.** The word "Lender" means First Fed Bank, its successors, participants and assigns.

16.12. **Loan.** The word "Loan" means the loan in the principal amount of $1,500,000.00 made by Lender to Borrower pursuant to the terms of this Agreement, the Note, and the other Related Documents, as they may be amended and restated from time to time.

16.13. **Note.** The word "Note" means the Note of even date herewith executed by Borrower in the principal amount of $1,500,000.00 together with all renewals, extensions, amendments, or modifications thereof.

16.14. **Permitted Liens.** The words "Permitted Liens" mean (1) liens and security interests securing Indebtedness owed by Borrower to Lender; (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; and (3) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing.

16.15. **Related Documents.** The words "Related Documents" mean all promissory notes, guaranties, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

16.16. **Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, assignment, pledge, chattel mortgage, collateral chattel mortgage, conditional sale, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

16.17. **Service and Management Agreement.** The words "Service and Management Agreement" mean the agreement between Borrower and Water Station Management, LLC, an affiliate thereof, or its or their respective successors or assigns, relating to the servicing, management, and operation of the System(s) financed by the Loan.

16.18. **System or Systems.** The words "System" or "Systems" mean the water dispensing systems described as part of the "Collateral" hereunder and financed by the Loan evidenced by this Agreement.

*[Signature page follows.]*

**ORAL AGREEMENTS. ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON STATE LAW**.

Executed as of the date first set forth above.

| | |
|---|---|
| **BORROWER:** | **LENDER:** |
| Cole WSTECH, LLC,<br>an Illinois limited liability company | FIRST FED BANK,<br>a Washington bank corporation |
| By: _*Ronald N. Cole*_____<br>Name: Ronald N. Cole<br>Its: Manager/Member | By: _*kasi O'Leary*_____<br>Kasi O'Leary, SVP, Director of Commercial Banking |

# EXHIBIT A

## Collateral Description

| | |
|---|---|
| Water Station alkaline vending machine model no. M700BVA, serial number | 101180 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 103052 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 101179 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 103229 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 101957 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 101965 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 102632 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 101185 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 101967 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 101184 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 101159 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 100986 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 102047 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 100798 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 101181 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 103909 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4918101263 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4518101215 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 5218101366 |
| Water Station alkaline vending machine model no. M700BVA, serial number | WS431803983 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4918101255 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 498101265 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4918101249 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 49181012771 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 5119101711 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 5119101714 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 498101256 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4518101200 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4518101196 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4518101210 |
| Water Station alkaline vending machine model no. M700BVA, serial number | WS431803988 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4518101203 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4518101211 |
| Water Station alkaline vending machine model no. M700BVA, serial number | WS431803994 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4518101194 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4518101190 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4518101197 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4518101202 |
| Water Station alkaline vending machine model no. M700BVA, serial number | WS431803990 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4518101188 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4518101206 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4918101272 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4518101213 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4918101274 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4518101204 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4918101254 |

| | |
|---|---|
| Water Station alkaline vending machine model no. M700BVA, serial number | 5018101280 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4918101257 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4518101212 |
| Water Station alkaline vending machine model no. M700BVA, serial number | WS431803985 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 5119101741 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4518101187 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4918101252 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4918101264 |
| Water Station alkaline vending machine model no. M700BVA, serial number | WS431803993 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 2519101491 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 5119101709 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4918101276 |
| Water Station alkaline vending machine model no. M700BVA, serial number | WS431804004 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 5119101731 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4918101250 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4918101258 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 103920 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4918101262 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4918101275 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 103936 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4918101248 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 103924 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4918101267 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 103942 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4918101273 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4518101193 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4918101259 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 5119101712 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4518101189 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 103938 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 5018101281 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 103910 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 5119101715 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4918101260 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 219101389 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 5118101333 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 5118101308 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 5118101315 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 5118101336 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4518101191 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4518101192 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 101150 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 102637 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 101160 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 10162 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 103012 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 103006 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 102609 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 101131 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 2519101517 |

DocuSign Envelope ID: D902F2A7-07AB-4EDD-B295-13F2FB2FCB8A

| Water Station alkaline vending machine model no. M700BVA, serial number | 101959 |
| --- | --- |
| Water Station alkaline vending machine model no. M700BVA, serial number | 103013 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 3019101615 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 2519101544 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 2819101606 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 3019101623 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 2519101525 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 2519101546 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 101176 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 101980 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 100315 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 101952 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 103201 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 281910166 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 101968 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 2819101579 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 5218101355 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 2819101577 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 2819101580 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 2819101598 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 100332 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 103003 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 5118101325 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 5218101341 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 2819101645 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 2819101563 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4418101175 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 103357 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 103513 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 2819101557 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 2819101559 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 103524 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 2519101529 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 2819101567 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 5218101357 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 2819101578 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 2819101552 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 2519101524 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 2819101589 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 2819101588 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 2819101584 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 5218101363 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 2819101574 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 103581 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 3019101628 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 103353 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 5218101356 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 103356 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 103203 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 103061 |

DocuSign Envelope ID: D902F2A7-07AB-4EDD-B295-13F2FB2FCB8A

Water Station alkaline vending machine model no. M700BVA, serial number 3019101609
Water Station alkaline vending machine model no. M700BVA, serial number 5118101326
Water Station alkaline vending machine model no. M700BVA, serial number 103027
Water Station alkaline vending machine model no. M700BVA, serial number 3019101622
Water Station alkaline vending machine model no. M700BVA, serial number 3019101610
Water Station alkaline vending machine model no. M700BVA, serial number 2519101530
Water Station alkaline vending machine model no. M700BVA, serial number 103034
Water Station alkaline vending machine model no. M700BVA, serial number 5118101330
Water Station alkaline vending machine model no. M700BVA, serial number 5118101318
Water Station alkaline vending machine model no. M700BVA, serial number 103018
Water Station alkaline vending machine model no. M700BVA, serial number 2819101603
Water Station alkaline vending machine model no. M700BVA, serial number 5118101328
Water Station alkaline vending machine model no. M700BVA, serial number 103042
Water Station alkaline vending machine model no. M700BVA, serial number 103517
Water Station alkaline vending machine model no. M700BVA, serial number 5218101358
Water Station alkaline vending machine model no. M700BVA, serial number 2819101670
Water Station alkaline vending machine model no. M700BVA, serial number 103024
Water Station alkaline vending machine model no. M700BVA, serial number 2819101683
Water Station alkaline vending machine model no. M700BVA, serial number 2819101682
Water Station alkaline vending machine model no. M700BVA, serial number 103095
Water Station alkaline vending machine model no. M700BVA, serial number 103368
Water Station alkaline vending machine model no. M700BVA, serial number 101157
Water Station alkaline vending machine model no. M700BVA, serial number 101960
Water Station alkaline vending machine model no. M700BVA, serial number 101142
Water Station alkaline vending machine model no. M700BVA, serial number 101962
Water Station alkaline vending machine model no. M700BVA, serial number 103175
Water Station alkaline vending machine model no. M700BVA, serial number 101152
Water Station alkaline vending machine model no. M700BVA, serial number 102600
Water Station alkaline vending machine model no. M700BVA, serial number 1620102189
Water Station alkaline vending machine model no. M700BVA, serial number 101156
Water Station alkaline vending machine model no. M700BVA, serial number 101954
Water Station alkaline vending machine model no. M700BVA, serial number 100950
Water Station alkaline vending machine model no. M700BVA, serial number 103383
Water Station alkaline vending machine model no. M700BVA, serial number 103093
Water Station alkaline vending machine model no. M700BVA, serial number 103191
Water Station alkaline vending machine model no. M700BVA, serial number 103105
Water Station alkaline vending machine model no. M700BVA, serial number 101191
Water Station alkaline vending machine model no. M700BVA, serial number 102631
Water Station alkaline vending machine model no. M700BVA, serial number 103014
Water Station alkaline vending machine model no. M700BVA, serial number 100885
Water Station alkaline vending machine model no. M700BVA, serial number 102643
Water Station alkaline vending machine model no. M700BVA, serial number 103104
Water Station alkaline vending machine model no. M700BVA, serial number 4418101159
Water Station alkaline vending machine model no. M700BVA, serial number 101196
Water Station alkaline vending machine model no. M700BVA, serial number 103109
Water Station alkaline vending machine model no. M700BVA, serial number 103099
Water Station alkaline vending machine model no. M700BVA, serial number 103097
Water Station alkaline vending machine model no. M700BVA, serial number 101145
Water Station alkaline vending machine model no. M700BVA, serial number 101956
Water Station alkaline vending machine model no. M700BVA, serial number 101199

| | |
|---|---|
| Water Station alkaline vending machine model no. M700BVA, serial number | 101202 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 101173 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 101175 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 101966 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 101981 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 101190 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 101995 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 103107 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 101163 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 101187 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 101153 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 101154 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 103002 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 100331 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 101144 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 100924 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4818101232 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 419101484 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4418101186 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4818101238 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4818101235 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4818101221 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4818101217 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 419101486 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4818101229 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 101990 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4818101227 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4818101219 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 5018101286 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4818101237 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4818101236 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4818101223 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 103361 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4818101239 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 419101469 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4818101228 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4818101220 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4818101224 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4818101231 |
| Water Station alkaline vending machine model no. M700BVA, serial number | 4818101241 |